Ernest Franklin **MARTIN, Jr.** and **Karen Katz, Plaintiffs,**

v.

The **SUPREME COURT OF the STATE OF NEW YORK; Barbara L. Martin; John C. Dillon, Sheriff of Onondaga County; Elaine Lytel, Clerk of Onondaga County, Defendants.**

No. 86–CV–312.

United States District Court, N.D. New York.

Oct. 7, 1986.

MUNSON, Chief Judge.

Plaintiff Ernest Franklin Martin, Jr., and his wife, Karen Katz, by their attorney, filed a complaint under 42 U.S.C. § 1983 asserting that specific state actors and Mr. Martin's ex-wife conspired to deprive them of property without due process of law essentially by Mrs. Martin's attempts to execute on a judgment obtained against Mr. Martin in Missouri and filed in New York. After oral arguments on defendants' motions to dismiss, plaintiff's attorney was admonished that the complaint appeared to be without foundation in the law, but was granted leave to file an amended complaint. The amended complaint filed was virtually identical to the original complaint; the only changes made were: deletion of State Supreme Court Justice Murphy as a named defendant and substitution of the Supreme Court of the State of New York in his stead and the reduction of monetary damages sought.

The defendants' motions to dismiss the plaintiffs' amended complaint under Rule 12(b)(6), Fed.R.Civ.P., were granted and defendant Martin's motion for sanctions was granted. The claim against defendant Martin is frivolous, without foundation in the law and vexatious and therefore warrants an award of attorneys fees to defendant Martin under 42 U.S.C. § 1988, and the imposition of sanctions against plaintiffs and plaintiffs' attorneys under Rule 11, Fed.R.Civ.P.

Finocchio & Edwards, Syracuse, N.Y., for plaintiffs; Vincent J. Finocchio, Jr., of counsel.

Robert Abrams, Atty. Gen. of N.Y., Albany, N.Y., for defendant The Supreme Court; Lawrence L. Doolittle, Asst. Atty. Gen., of counsel.

Greenwald & Dague, Syracuse, N.Y., for defendant Martin; Raymond J. Dague, of counsel.

Robert J. Rossi, Co. Atty., Syracuse, N.Y., for defendants Dillon and Lytel; Diane Tucker, of counsel.

I

Plaintiff Mr. Martin and defendant Mrs. Martin were divorced on March 12, 1984 by decree issued in the Circuit Court of St. Louis County, Missouri. Mr. Martin was the original petitioning party. The divorce decree incorporated the separation agreement executed between the parties providing for periodic support payments by Mr. Martin to Mrs. Martin for the support of their two children.[1] Mr. Martin married

---

1. The separation agreement incorporated into the divorce decree dated March 12, 1984 provid-

ed, *inter alia,* for weekly child support payments with incremental increases plus specified lump

the plaintiff Karen Katz on March 17, 1984. Amended Complaint ¶ 6. Eighteen months after the divorce decree Mrs. Martin returned to Missouri state court seeking to obtain a judgment for arrears in child support payments. Mrs. Martin submitted an affidavit stating that the arrears accumulated up to that time amounted to $16,825. She was granted a judgment in that amount by the Missouri state court on November 13, 1985. Because at the time Mrs. Martin obtained the Missouri judgment her ex-husband, Mr. Martin, was living in New York, Mrs. Martin by her attorney in this action, filed the out-of-state judgment in the Clerk's Office of Onondaga County, New York under § 5402, N.Y.Civ.Prac.Law & Rules.[2] An income execution was issued to Mr. Martin's employer, Syracuse University, and a restraining notice to the Syracuse University Credit Union was issued on Mr. Martin's account.

Plaintiff Martin then instituted an action in New York Supreme Court requesting the court to (1) stay and modify the income execution, (2) vacate the Missouri arrears judgment filed in the Onondaga County Clerk's office, (3) stay and vacate the property execution against his credit union funds, and (4) modify his support obligations based on a change in circumstances. Supreme Court Justice Thomas J. Murphy initially granted petitioner's request for a stay of enforcement of the judgment. Following arguments on Mr. Martin's petition, Justice Murphy ordered that Mr. Martin's application to vacate the judgment be held in abeyance for sixty days to permit him to initiate proceedings in Missouri to vacate or modify the judgment issued in Missouri state court. Justice Murphy's order further provided that if Mr. Martin failed to commence proceedings in Missouri within 60 days, Mrs. Martin would be permitted, on notice, to apply for an order denying Mr. Martin's various requests for relief in the New York Supreme Court and vacating the stay of enforcement of the judgment.

Mr. Martin did not commence a proceeding in Missouri during the 60-day period, but rather filed a petition in Family Court of Onondaga County, seeking a reduction of the weekly child support directed by the Missouri court and a vacatur of the arrears accrued under the Missouri court decree. In addition, Mr. Martin and his new wife commenced the instant action in this court against Justice Murphy, the Sheriff and Clerk of Onondaga County, and Barbara L. Martin, Mr. Martin's ex-wife. At the request of Mr. Martin following his commencement of a lawsuit in this court in which Justice Murphy was named as a defendant, Justice Murphy recused himself and the Supreme Court action was heard by Justice Hurlbutt. After more than 60 days had passed Mrs. Martin moved in Supreme Court to vacate the stay of enforcement of the judgment filed in the county Clerk's office and to permit the execution on the judgment against Mr. Martin. Justice Hurlbutt granted Mrs. Martin's motion and dismissed Mr. Martin's petition in Supreme Court for failure to comply with Justice Murphy's direction that he proceed in Missouri court to set aside or modify the Missouri judgment.

sum payments at dates certain by Mr. Martin to Mrs. Martin.

2.  § 5402. Filing and status of foreign judgments

   (a) Filing. A copy of any foreign judgment authenticated in accordance with an act of congress or the statutes of this state may be filed within ninety days of the date of authentication in the office of any county clerk of the state. The judgment creditor shall file with the judgment an affidavit stating that the judgment was not obtained by default in appearance or by confession of judgment, that it is unsatisfied in whole or in part, the amount remaining unpaid, and that its enforcement has not been stayed, and setting forth the name and last known address of the judgment debtor.

   (b) Status of foreign judgments. The clerk shall treat the foreign judgment in the same manner as a judgment of the supreme court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of the supreme court of this state and may be enforced in like manner.
N.Y.Civ.Prac.Law & Rules § 5402 (McKinney 1978).

## II

Plaintiffs' complaint asserts claims under 42 U.S.C. § 1983, the fourteenth amendment, and 15 U.S.C. § 1673 (limiting the amount of income subject to garnishment). The complaint asserts that plaintiffs were not given notice prior to the entry of judgment in Missouri state court and that the New York Supreme Court's failure to provide a forum in New York for challenging the out-of-state judgment violates due process of law.

In the first cause of action, plaintiffs assert that all of the defendants, individually, collectively and/or via a conspiracy, acted to "deny plaintiffs their right of and the use of their property" and seek an injunction against such deprivation.

■ Deprivation of property, per se, is not protected by the fourteenth amendment. Rather, it is only when state actors act so as to deprive a person of property without due process of law that the due process clause of the fourteenth amendment may be invoked to seek judicial redress under 42 U.S.C. § 1983.

In the case before the court, the Missouri court, as part of divorce decree, ordered Mr. Martin to make specified payments. The divorce proceeding, initiated by Mr. Martin, was conducted with appearances by both parties; it would seem to be beyond dispute that the Missouri court had in personam jurisdiction over Mr. Martin. Under Missouri law, past due amounts of child support encompassed in a divorce decree become judgments. *Mackey v. Mackey and Associates, Inc.*, 677 S.W.2d 349 (Mo. App.1984); *Barbara v. Charles*, 632 S.W.2d 92 (Mo.App.1982). By statute, court decrees respecting maintenance or support are modifiable only as to future installments. Mo.Ann.Stat. § 452.370 subd. 1 (Vernon 1986).[3] After Mr. Martin had failed to make payments as ordered, Mrs. Martin returned to the Missouri court and submitted an affidavit attesting to the arrears. Upon this affidavit, and presumably, construing the complaint in the light most favorable to plaintiffs, without notice to Mr. Martin, the Circuit Court of St. Louis County entered judgment for the past due amount against Mr. Martin.

■ Generally due process of law encompasses notice to a debtor prior to entry of judgment on the debt. *See Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). However the requirements of due process of law are not rigid, *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); child support awards upon divorce decrees need not be regarded under the law in the same light as ordinary commercial debts.[4] States have a strong interest in assuring that parents meet their support obligations as reflected by numerous states' enactment of statutes explicitly designed to aid collection efforts of one parent against another parent who neglects court-ordered support obligations. Domestic relations is an area into which federal courts do not generally intrude. This court would be extremely reluctant to dismantle the statutory processes for collection of past-due support payments previously ordered by a state court in a divorce proceeding in which both parties appeared and the jurisdiction of the court which issued the divorce decree is uncontested. There is no due process prob-

---

**3.** The Missouri statute provides: "[A]ny decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Mo.Ann.Stat. § 452.370 subd. 1 (Vernon 1986).

**4.** "The opportunity to defeat a claim—the right to notice before a court can determine liability—is a safeguard guaranteed by the Due Process Clause. But money judgments are not like peas in a pod. Because of differences in the source and function of liability, the demand of fairness which underlies the requirement of notice may well be satisfied by different procedures. A judgment for future alimony, as one of the incidents of jurisdiction to decree a divorce, is very unlike a judgment for the ordinary lump sum indebtedness. It is in effect an ambulatory judgment for each installment as it becomes due." *Griffin v. Griffin*, 327 U.S. 220, 249, 66 S.Ct. 556, 570, 90 L.Ed. 635 (1946) (Frankfurter, J. dissenting).

lem in Missouri's treating past due installments as a judgment debt thereby allowing for the entry of judgment on the past due amounts merely upon a showing that the past due amounts remain unpaid. "Due process does not require that notice be given before the confirmation of rights theretofore established in a proceeding of which adequate notice was given." *Griffin v. Griffin*, 327 U.S. 220, 233–34, 66 S.Ct. 556, 562–63, 90 L.Ed. 635 (1946). Accordingly, the fourteenth amendment does not dictate that Mr. Martin receive notice prior to entry of judgment against him in Missouri state court for past due child support payments.

New York, in allowing the registration of out-of-state judgments for support obtained by default, treats support judgments differently from default judgments generally: though default judgments may not be registered under N.Y.Civ.Prac.Law § 5402, out-of-state judgments obtained for accrued support without an appearance by the debtor spouse are not regarded as default judgments under § 5402 and therefore may be registered and execution may be issued thereon as if the judgment were a New York judgment. *Ehrenzweig v. Ehrenzweig*, 86 Misc.2d 656, 664, 383 N.Y.S.2d 487, 494 (Sup.Ct.1976); 89 Misc.2d 211, 214, 390 N.Y.S.2d 976, 980 (Sup.Ct.1977), *aff'd*, 61 A.D.2d 1003, 402 N.Y.S.2d 638 (2d Dept.1978).

■ Plaintiffs assert that due process of law mandates New York's providing the debtor spouse with a forum in which to adjudicate Mrs. Martin's claim of entitlement to past-due support payments. The fourteenth amendment does not dictate that the debtor spouse have such a forum in the state in which he resides. The court has already concluded that due process is not impinged by Missouri's treating past-due support payments as a judgment debt. Upon a party's obtaining a judgment in a foreign state for support arrears, New York courts are obligated under the full faith and credit clause, 28 U.S.C. § 1738, to give recognition to such foreign judgments. *See Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct.

682, 54 L.Ed. 905 (1910). *Farmland Dairies v. Barber*, 65 N.Y.2d 51, 55–56, 489 N.Y.S.2d 713, 716, 478 N.E.2d 1314 (1985).

A person in New York seeking to challenge New York's recognition of a judgment of a sister state may bring such a challenge in state court. The availability of state court procedures satisfies due process requirements. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The New York court would be without power to re-open the merits of a foreign state court proceeding absent an assertion that the foreign state court lacked jurisdiction. If lack of in personam jurisdiction by the Missouri court was raised by Mr. Martin in New York Supreme Court and this issue was decided adversely to him, his proper recourse is appeal in state court. *See Allen v. McCurry*, 449 U.S. 90, 97–99, 101 S.Ct. 411, 416–17, 66 L.Ed.2d 308 (1980). If he failed to raise this issue he has lost it by operation of res judicata. *See Migra v. Warren City School District Board of Education*, 465 U.S. 75, 84, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984). Justice Murphy's providing Mr. Martin with the opportunity to return to Missouri to attack the judgment there while staying the execution of the judgment in New York provided plaintiffs with all process of law which is constitutionally due them.

Defendants' proceeding under New York state law to register and execute on the judgment is not asserted to be improper. Other than failing to afford Mr. Martin a forum in New York in which to relitigate the claim to the payments incorporated in the divorce decree, plaintiffs make no assertion that defendants acted in contravention of their constitutional rights. New York's post-judgment remedies have been upheld as consistent with the dictates of the fourteenth amendment. *McCahey v. L.P Investors*, 774 F.2d 543 (2d Cir.1985). Plaintiffs do not allege that the procedures employed by Mrs. Martin to execute on the judgment in New York did not comply with New York law. Also, there is no allegation in the complaint that the County Sheriff

and Clerk, or the Justices of the Supreme Court who heard Mr. Martin's petition deviated from state law. Accordingly, plaintiffs state no claim for violation of their fourteenth amendment right to due process of law. Defendants acted to deprive plaintiffs of their property but not without due process of law. Therefore plaintiffs are not entitled to the relief sought in their first cause of action that defendants be enjoined from depriving plaintiffs of their property.

■ In the second cause of action, plaintiffs seek a declaratory judgment that the judgment registered in New York is invalid. Because plaintiffs' constitutional rights were not violated by the procedures by which the New York judgment was obtained as just previously discussed, such declaratory relief would necessitate only an application and interpretation of New York law which must be sought in state court only. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984).

■ In the third cause of action, plaintiffs seek declaratory judgment that the income execution is of no force and effect and in violation of 15 U.S.C. § 1673, the federal statutory provision limiting the amount of money which may be garnished from wages. The income execution issued pursuant to a valid New York judgment may not be attacked in this court. If the garnishment exceeds the permissible limits provided in § 1673 as asserted in plaintiffs' complaint, Mr. Martin may seek modification of this garnishment in state court. This statute does not confer subject matter jurisdiction on a federal court over such a claim. *See Snapp v. U.S. Postal Service,* 664 F.2d 1329, 1331 (5th Cir.1982); *Haines v. General Motors Corp.,* 603 F.Supp. 471, 474 (S.D.Ohio 1984). Even if there were subject matter jurisdiction, res judicata would bar plaintiffs' asserting this claim in this court because the New York Supreme Court dismissed Mr. Martin's petition seeking, *inter alia,* modification of the income execution. *See Migra,* 465 U.S. 75, 104 S.Ct. 892. Plaintiffs do not assert that the

wage garnishment against Mr. Martin is not subject to review in New York state court.

The fourth cause of action seeks an injunction against the Sheriff delivering any money to defendant Martin. Again since there is no constitutional right implicated, the Sheriff will not be enjoined from following his statutory duties in executing upon a validly registered judgment.

The fifth cause of action seeks mandamus to compel the clerk to strike the judgment from the judgment roll. The same as the Sheriff, the Clerk will not be restrained from carrying out her statutory duty proceeding from a valid New York judgment.

The sixth cause of action seeks a declaration that the judgment is invalid because of a lack of notice to plaintiffs and a violation of their right to due process of law. Because it has already been decided that plaintiffs state no claim under their first cause of action under the due process clause, the sixth cause of action for a declaratory judgment is similarly dismissed.

■ The seventh cause of action seeks an injunction restraining defendant Martin "from committing any further constitutional torts against the plaintiffs." Plaintiffs' complaint does not state a claim for any constitutional tort committed by defendant Martin; her attempts to execute on a valid judgment appear statutorily proper and in either case do not impinge on the plaintiff's constitutional rights. Additionally, there is absolutely nothing in the complaint which would support a finding that defendant Martin acted under color of state law making her actions redressable in a civil rights action by the plaintiffs. It is well established that a private actor's employment of available statutory remedies does not convert such private action into action of the state. *See Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

■ Private persons acting in conspiracy with state public servants to deprive others of their federal rights may be deemed to act under color of state law and

therefore be held subject to § 1983 actions. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Colombrito v. Kelly,* 764 F.2d 122, 132 (2d Cir.1985). However, in this Circuit, an assertion of a conspiracy in a § 1983 action must be pleaded with specificity. Here there is nothing more in the complaint than the allegation that defendant Martin employed the statutorily-provided mechanisms for registration of, and execution on, a judgment. This is insufficient to support a claim that defendant Martin, a private actor, conspired with the state employees functioning as part of the registration and execution process, or with the Justices of the Supreme Court who enforce judgments.

The Eighth cause of action asserts that defendants collectively have acted in "careless disregard for the rights of the plaintiffs" and requests injunctive and declaratory relief to force defendants to afford plaintiffs "a forum for the full adjudication of their rights to the said monies." The assertion that *defendant* Martin has acted in careless disregard for the rights of *plaintiffs* is disingenuous at best. Though not relevant to a determination of the sufficiency of plaintiffs' complaint, the court cannot restrain from commenting that it is clear that if any party has acted in "careless disregard for the rights" of the other, it is most certainly Mr. Martin who has done so by entering into an agreement for the payment of child support and then reneging on this legal obligation to provide support for his own children necessitating defendant Martin's returning to court in Missouri to obtain a judgment on the arrears and then employing an attorney in New York to enforce the judgment against her ex-husband. Be this as it may, plaintiffs have asserted no rights protected by the Constitution.

The ninth cause of action is solely against defendant Martin seeking monetary damages of $50,000 actual and $50,000 punitive, down from the demand in the original complaint of one million dollars in actual damages and $500,000 in punitive damages. Because, as earlier discussed, plaintiffs state no claim for constitutional injury by Mrs. Martin and because there is no basis for an assertion that she is acting under color of state law making her actions subject to redress under § 1983, this claim, as with all of the others, is dismissed.

### III

██ Defendant Martin's motion for sanctions was granted from the bench at the time defendants' motions to dismiss were granted. Pursuant to the court's direction, Mrs. Martin's attorney subsequently submitted documentation of the attorneys fees he requested. Sanctions against plaintiffs' attorneys is mandated by the complaint's being totally devoid of legal merit; "a competent attorney could not form a reasonable belief that any of claims were 'warranted by existing law or a good faith argument for extension, modification, or reversal of existing law.'" *Bartel Dental Books Co., Inc. v. Schultz,* 786 F.2d 486, 490 (2d Cir.) (quoting Rule 11, Fed.R. Civ.P.) *cert. denied,* —— U.S. ——, 106 S.Ct. 3298, 92 L.Ed.2d 713 (1986). Even recognizing the haste with which plaintiffs' attorneys may have had to draft the original complaint, there is no justification for plaintiffs' attorneys' resubmitting essentially an identical complaint after being granted leave to file an amended complaint. However, both the original and amended complaints contain no plausible basis in existing law for a constitutional claim against defendant Martin and therefore the court must impose sanctions against plaintiffs' attorneys. *See Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985)

In addition to the complaint's not being warranted by existing law, it appears to the court that the plaintiffs brought this lawsuit against Mrs. Martin out of retaliation for her attempt to collect a valid New York judgment for child support and maintenance arrears.[5] Bringing a civil rights

---

5. Although it could be said if plaintiffs had a valid claim, they were merely seeking a forum

action against one's ex-wife to prevent her collection efforts is a manipulation of the federal court for improper purposes. *See id.* at 254. The court will not condone such conduct and therefore on this basis imposes sanctions against plaintiffs and plaintiffs' attorneys under Rule 11, Fed.R.Civ.P.

■ Because it appears evident that plaintiffs' lawsuit against Mrs. Martin framed as an action under 42 U.S.C. § 1983 was in retaliation for her efforts to collect past due child support, defendant Martin is entitled to attorneys fees against plaintiffs as the prevailing defendant under 42 U.S.C. § 1988. As previously stated, there is no perceivable basis for holding a private person such as Mrs. Martin liable under 42 U.S.C. § 1983; plaintiffs' lawsuit in this court attempting to impede Mrs. Martin's efforts to collect on a valid judgment was unreasonable and vexatious. *See Harbulak v. County of Suffolk,* 654 F.2d 194, 198 (2d Cir.1981). Therefore Mrs. Martin will be granted judgment for her attorneys fees against plaintiffs.

Defendant Martin's attorney Mr. Dague has requested compensation for 36.4 hours for defending the action; 5.0 hours for preparing the fee application and $73.08 in disbursements. A review of time spent as indicated in Mr. Dague's supplemental affidavit in support of defendant's motion for attorneys fees indicates that Mr. Dague spent approximately 25.2 hours to prepare his papers in support of defendant's motion to dismiss. It can reasonably be expected that an attorney in Mr. Dague's position would exercise billing judgment and not charge his client for all of these hours expended. *See Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). For example, all of his conference time with his co-defendants' attorneys would probably not be properly chargeable to his client. The court accordingly reduces Mr. Dague's compensible hours for preparation of his motion papers

to 18 hours. The remainder of his time spent in defense of this action appears reasonable. This reduction of Mr. Dague's compensible hours adjusts the number of compensible hours to 29.2 for defense of the lawsuit plus 5.0 hours for preparation of the fee application, for a total number of reasonable compensible hours of 34.2. The court will award Mr. Dague his requested hourly rate of $80 which is a reasonable rate in Syracuse for someone of Mr. Dague's experience. Based on a total of 34.2 hours at the requested rate of $80 per amounts, the lodestar is $2736.

■ Mr. Dague has requested an upward adjustment of the lodestar by 50%. While the court recognizes that at the time he agreed to undertake Mrs. Martin's defense in this lawsuit on an hourly basis, she would not be the most attractive client to an attorney who may look for recovery of his fees from the funds recovered from his collection efforts; at the time the federal action was instituted the Supreme Court had stayed the enforcement of the judgment against Mr. Martin. However there is nothing in the record indicating that Mr. Dague's fees were contingent. Given the strong presumption that the lodestar is a reasonable amount for an award of attorneys fees to the prevailing party under § 1988, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* — U.S. ——, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986), the court declines to increase the lodestar.

Under Rule 11, the court determines that an appropriate sanction against plaintiffs and plaintiffs' attorney is an order to pay defendant Martin the amount of $3100 which includes an award of costs and attorneys fees plus additional compensation to defendant Martin for being forced to defend a lawsuit not well-founded in the law and motivated by retaliation and harassment.

within which to vindicate Mr. Martin's rights, plaintiffs could in no way be justified in seeking to hold Mrs. Martin liable for constitutional infringements as a state actor. Also, the ex-

tremely large amount of money sought from Mrs. Martin points toward harassment and intimidation as plaintiffs' motives rather than the assertion of valid legal claims.

## ORDER

Defendant Martin is hereby awarded attorneys fees and costs under 42 U.S.C. § 1988 against plaintiffs in the amount of $2809.08.

Plaintiffs and plaintiffs' attorneys are hereby ordered to pay to defendant Martin the sum of $3100 as sanctions under Rule 11, Fed.R.Civ.P.

The clerk is hereby directed to enter judgment in favor of defendant Martin in the above amounts; defendant's recovery on these judgments is limited to a total recovery of $3100.

IT IS SO ORDERED.