2006 OK CIV APP 113

Kay REEVES, Plaintiff/Appellant,

v.

Johnny Ray PARKER,
Defendant/Appellee.

No. 101,139.

Court of Civil Appeals of Oklahoma,
Division No. 3.

May 12, 2006.

Certiorari Denied Sept. 18, 2006.

Gaylon C. Hayes, Hayes Law Firm, Oklahoma City, OK, for Plaintiff/Appellant.

M. Joe Crosthwait, Jr., Traci L. Soderstrom, The Crosthwait Law Firm, Midwest City, OK, for Defendant/Appellee.

Opinion by KENNETH L. BUETTNER, Chief Judge.

¶ 1 The parties, sister and brother, were apparently involved in contentious guardianship litigation in Oklahoma County. Plaintiff sister filed a tort action for false imprisonment against Defendant brother in Cleveland County. Brother filed a motion for 12 O.S. 2001 § 2011 sanctions which the court granted on the ground that Sister's Cleveland County lawsuit was an act of "retaliation for actions and circumstances going on involving a highly contested guardianship case in Oklahoma County, . . . ." It then granted the Application for Sanctions only to the extent of dismissing Sister's Cleveland County petition. It ordered each side to pay its own attorney fees and costs. We reverse.

¶ 2 Kay Reeves' petition, filed January 26, 2004, alleges an action for false imprisonment against her brother, Johnny Ray Parker, and specifically states that August 27, 2003, Parker unlawfully and without legal justification physically restrained her personal liberty and freedom of locomotion against her will in these three particulars: (1) Parker restrained her while inside the restroom of her mother's apartment in the Heartland Plaza, an assisted living center in Moore, Oklahoma; (2) Parker blocked her from exiting her mother's apartment once she escaped from the restroom; and (3) Parker threatened her with bodily harm and told her she could not leave the apartment until she revealed the

identity of the attorney that she had allegedly retained to represent her mother, when in fact she had not hired any attorney so that she could not give a satisfactory answer to affect her release. She alleged that Parker continued this unlawful conduct even after she and health care workers at the assisted living center called the Moore Police Department. It was only after the police arrived that she was able to gain her freedom. She claimed injury because of the false imprisonment. Her second cause of action was for assault and her third cause of action was for intentional infliction of emotional distress, both based on the same facts. She claimed injury from these tortious acts and damages in excess of $10,000.[1]

¶ 3 In his Application for Sanctions, filed February 26, 2004, Parker alleged that Reeves' petition was filed solely to harass and intimidate him, not to redress a legitimate claim against him. He then advised the court of the Oklahoma County guardianship proceedings pending and attached a copy of "Letters of Special Guardianship" that had been issued to him appointing him the guardian of his mother September 11, 2003 and showing her to be a partially incapacitated person. He further advised the court in his Application for Sanctions that as Special Guardian of his mother, he sought additional monies from her financial advisor in order to pay the mother's bills and, despite two letters to her investment advisor, access to the funds was refused at the behest of Reeves and her attorney. Parker at-

tached the letters attesting to these facts.[2] Further, Parker stated that both attorneys for Reeves were well-aware of the facts. Attorney Liddell was the attorney of record in the Oklahoma County guardianship litigation and attorney Hayes was present during the deposition of Parker, so he knew what truly happened during the August 27, 2003 occurrence.

¶ 4 Parker further alleged in his Application for Sanctions that Reeves' petition in Cleveland County was without merit and grievously exaggerated and embellished an incident that occurred five months previously. He alleged its only purpose was to harass and punish him and not to pursue a legitimate claim. He stated that the "factual" contentions had no evidentiary support. He also averred that the petition was lodged for the improper purpose of increasing and causing unnecessary litigation expenses and for Reeves to posture herself in a better position for the guardianship proceeding. Finally, Parker attested that pursuant to 12 O.S.2001 § 2011(C), he had given Reeves proper notice and an opportunity to dismiss.

¶ 5 Reeves filed her Response to the Application for Sanctions March 8, 2004.[3] In her Response, Reeves denied the allegations of the Motion for Sanctions, realleged the grounds of her petition, and pointed out that Parker admitted his conduct of false imprisonment and intentional infliction of emotional distress in his deposition, which she attached to her response.[4] She further claimed that

---

1. Parker filed his Answer March 5, 2004, which contained admissions to jurisdiction and venue, but otherwise denied the allegations and asserted affirmative defenses.

2. On January 14, 2004, the investment advisor responded to Parker's attorney, stating that in accordance with his recommendation, she contacted the attorney for the sister. That attorney told her not to release the funds to Parker and informed her that the mother had a court-appointed guardian *ad litem* since early November. The advisor then met with the guardian *ad litem* who stated that there was a Motion to Clarify/Authorize Payment of Funds. The advisor hoped it would be heard quickly.

3. We grant Appellant Reeves' Application for Leave to Supplement Designation of Record. The Docket Sheet reveals that the trial court had the pleadings at the time of the hearing on the

Motion for Sanctions. Further, the error appears to be a matter of miscommunication with the court clerk's office, and not a matter of substance. Finally, Appellee's objection does not suggest that the Response was not accurate and complete.

4. A: I got to Heartland Center, and Kay was in the restroom, mother was down eating lunch—supper, one of the two. Probably supper.

I let Kay know I was in the apartment. She stayed in the restroom for an extended length of time. When she come out, she grabbed her purse and started to leave.

I asked her who she—they had retained as an attorney. She said she didn't want to talk to me. She wouldn't answer me. So I stood in front of the door. And I asked her again who the attorney was, and she said, "Let me out." And I said, "Not until you tell me who the attorney was."

Parker's § 2011 Motion for Sanctions was an attempt to extort her into dismissing her legitimate claim.

¶ 6 The trial court heard the Application for Sanctions and Response March 10, 2004. The order states that it heard testimony and argument of counsel. It then issued its order in which it found that the Application for Sanctions was sustained only to the extent that it dismissed Plaintiff's petition. It found that Reeves filed the action in retaliation for actions and circumstances going on involving a highly contested guardianship case in Oklahoma County. It ordered each party to assume its own attorney fees and costs.

¶ 7 On appeal, Reeves argues (1) that the sanction could not be based on the court's inherent power; (2) that the order failed to pass muster pursuant to 12 O.S.2001 § 2011(C)(3); and (3) that the Court's application of 12 O.S.2001 § 2011 is constitutionally infirm.

¶ 8 With respect to the first allegation of error, Defendant's Application for Sanctions only alleged § 2011 grounds and the Court sustained the Application. The Court's inherent power to sanction was never invoked. There is no merit to this proposition of error.

¶ 9 Next, Reeves claims that the trial court failed to follow 12 O.S.2001 § 2011(C)(3) which requires the court describe the conduct which violates the section and explain the basis for the sanction imposed.[5] However, in this case, the Application for Sanctions was detailed factually so Reeves was on notice of the allegations to be presented to the court. Further, Reeves' Response was equally detailed. Finally, the Order states that it was granted on the Application. The challenged conduct was sufficiently described.

 ¶ 10 However, we agree that Reeves' lawsuit was wrongfully dismissed.

We review the trial court's order with respect to § 2011 sanctions for abuse of discretion. *Warner v. Hillcrest Medical Center*, 1995 OK CIV APP 123, 914 P.2d 1060. The initial concern is whether the attorney had an objectively reasonable basis in fact and in law when she initially files the claim. *Id.* Although Reeves couched her proposition in error in constitutional language,[6] the fact is, she provided the trial court with admissible evidence of her colorable claim to relief. In *Warner*, the trial court held that one of the parties and its law firm's allegations against the Hillcrest Entities was made without basis in fact and that their repeated successful efforts at keeping Hillcrest Entities in the lawsuit even after it was apparent that there was no basis in law or fact for doing so, was a § 2011 violation. The appellate court found no abuse of discretion in affirming the award of sanctions.

¶ 11 In the case at bar, however, the trial court was presented with both a factual and legal basis for the action. "Retaliation" is not specifically mentioned in § 2011(B)(1). Rather, § 2011(B)(1) states that an attorney is certifying that the pleading is not being presented for "... any improper or frivolous purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; ..."

¶ 12 In a sense, much litigation is filed for retaliatory purposes. A person aggrieved by a tort or a breach of contract retaliates by bringing a lawsuit. Neither party's brief cites any case where retaliation, in and of itself, was held to be an improper purpose under § 2011 or Rule 11.

¶ 13 Retaliation is mentioned in *Martin v. Supreme Court of the State of New York*, 644 F.Supp. 1537 (N.D.N.Y.1986):

In addition to the complaints' not being warranted by existing law, it appears to

---

I realize now that that was a poor judgment. But I held her in there until the staff called the police department, and they came down and opened the door and let her walk out.

**5.** 12 O.S.2001 § 2011(C)(3): ORDER. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed.

**6.** Okla. Const. Art. 2, § 6: The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

the court that the plaintiffs brought this lawsuit against Mrs. Martin out of retaliation for her attempt to collect a valid New York judgment for child support and maintenance arrears. Bringing a civil rights action against one's ex-wife to prevent her collection efforts is a manipulation of the federal court for improper purposes.... The court will not condone such conduct and therefore on this basis imposes sanctions under Rule 11, Fed. R.Civ. P.

*Id.* at 1544–45.

¶ 14 However in *Martin,* the retaliatory motive was viewed in tandem with a legally unsupportable claim.

¶ 15 Retaliation is also mentioned in *Jacques v. DiMarzio,* 200 F.Supp.2d 151 (E.D.N.Y.2002):

The Court is deeply troubled by DiMarzio's $500,000 counterclaim, which appears to be nothing more than a naked form of retaliation against Jacques, a vulnerable plaintiff who suffers from a significant mental impairment, for filing her lawsuit. She should not be subject to *in terrorem* tactics.

*Id.* at 162. The court then allowed the defendant the opportunity to submit legal authority and evidence to justify the counterclaim.

Although it remains to be determined whether Rule 11 sanctions are appropriate in this case, the Court pauses to admonish the practicing bar against asserting baseless, retaliatory counterclaims. Such claims constitute the type of abusive, harassing practices proscribed by Rule 11....

*Id.*

¶ 16 In the instant case, Parker argued that Reeves filed her petition in retaliation for Parker cutting off the utilities at their mother's house, where Reeves was living. Parker's evidence of retaliation is that the suit was filed eleven days after the cut-off, but almost five months after the alleged incident.

¶ 17 There are many motives for filing lawsuits. We believe that more than circumstantial evidence of retaliatory motive in filing a claim that is factually and legally supported is necessary to meet the "improper or frivolous purpose" test of § 2011. For example, there is no evidence that Reeves would not have eventually filed the case, regardless of the outcome of the guardianship proceeding. Nor is there evidence that Reeves was not legitimately seeking damages for a perceived wrong; or that she was seeking some advantage in the guardianship proceeding by filing her suit.

¶ 18 The examples in § 2011(B)(1) "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," also suggest that something more is required than solely a subject intent to "get back" at a defendant.

¶ 19 Therefore, we hold the dismissal of Reeves' petition under § 2011(B)(1) was an abuse of discretion and must be reversed. The case is remanded for further proceedings. We express no opinion on the merits of plaintiff's claims or defendant's defenses. It is based solely on the materials submitted by the parties in the sanctions proceeding, only part of which was evidentiary. We hold that a retaliatory motive for initially filing a claim, that is factually and legally supportable, is not the equivalent of an improper purpose required by § 2011(B)(1).

¶ 20 REVERSED AND REMANDED.

MITCHELL, P.J., and ADAMS, J., concur.